SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

JOSEPH S. GILBERT, ESQ.
Nevada Bar No.: 9033
ROGER O'DONNELL, ESQ.
Nevada Bar No.: 14593
JOEY GILBERT LAW
201 W. Liberty Street, Suite 210
Reno, Nevada 89501
Tel: (775) 284-7000
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Co-Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CALVARY CHAPEL LONE MOUNTAIN, a Nevada Non-profit Organization,<br><br>Plaintiffs,<br><br>vs.<br><br>THE HONORABLE STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada, AARON DARNELL FORD, in his official capacity as the Attorney General of the State of Nevada, JUSTIN LUNA, in his official capacity as Chief of the Nevada Division of Emergency Management; DOES 1 through 100.<br><br>Defendants. | Case No.: 2:20-cv 00907 RFB-VCF<br><br>**SUPPLEMENT TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    PROCEDURAL POSTURE ...................................................................................4

II.    STATEMENT OF RELEVANT FACTS ..........................................................4-9

    A. RELEVANT NATIONWIDE JURISPRUDENCE……………………………5-7

    B. GEORGE FLOYD PROTESTS…………………………………………………..7-9

III.    LEGAL ARGUMENT ......................................................................................9-16

IV.    CONCLUSION…………………………………………………………………….17

# TABLE OF AUTHORITIES

**CASES**  **PAGE(S)**

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ......... 9

*Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 293 (1984) ......... 10

*Grossman v. City of Portland,* 33 F.3d 1200, 1204-05 (9th Cir. 1994) ......... 10

*Long Beach Area Peace Network v. City of Long Beach,*
522 F.3d 1010, 1021 (9th Cir. 2008) ......... 9

*Lovell v. City of Griffin,* 303 U.S. 444, 450 (1938) ......... 9

*Perry Educ. Ass'n v. Perry Educators' Ass'n,* 460 U.S. 37 (1983) ......... 9, 10

*Pleasant Grove City v. Summum,* 555 U.S. 460, 469 (2009). ......... 9

*South Bay Pentecostal Church et al ,v Gavin Newsom,*
*Governor of California; 590 U.S. _____(2020)* ......... 5

*Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) ......... 10

**STATUTES**

A.   U.S. Const. Amends. I, ......... 9

## SUPPLEMENT TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW, PLAINTIFFS, CALVARY CHAPEL LONE MOUNTAIN, by and through the undersigned attorneys of record, SIGAL CHATTAH, ESQ., of the CHATTAH LAW GROUP, and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, and pursuant to Fed. R. Civ. Pro. 65, hereby supplement Plaintiff's Motion for Preliminary Injunction filed May 21, 2020 [ECF 11].

Plaintiffs' Supplement is based upon the pleadings and papers on filed herein, the Motion and Declaration of Pastor Jimmy Morales and the Exhibits and Declarations filed concurrently herewith, and the following points and authorities.

## PROCEDURAL POSTURE

On May 21, 2020, Plaintiffs' filed their Motion for Preliminary Injunction requesting this Courts relief as to the Executive Directive 20-013. This Court subsequently, instructed Defendants to file a response to same by May 28, 2020, in particularly, delineating Defendants' understanding of: a.) when the Plaintiffs would be able to open and have services; and b.) what restrictions would be imposed upon Plaintiffs when they reopened for services. See [ECF 12].

Following Defendants' announcement that places of worship were authorized to open at a limited capacity of 50 people on May 26, 2020, this Court further supplemented its May 22, 2020 minute Order requesting Plaintiffs supplement their Motion for Preliminary Injunction. Plaintiffs hereby submit the foregoing Supplement to their Motion.

## STATEMENT OF RELEVANT FACTS

On May 28, 2020, Defendants issued Executive Order dated same day which provides in relevant part:

Communities of worship and faith-based organizations, including without limitation, churches, synagogues, mosques, and temples, are strongly encouraged to offer online and drive-up services to the greatest extent possible. Effective 12:01 am on May 29, 2020, consistent with other Directives on public gatherings, houses of worship may conduct indoor in-person services in a manner so that no more than fifty persons are gathered, and all social distancing requirements are satisfied. This limitation shall not apply to houses of worship offering drive-up services pursuant to Section 10 of Directive 016. Houses of worship offering indoor, in-person services are encouraged to follow the guidelines promulgated by the LEAP, as well as the following provisions that are consistent with other Directives on public gatherings:

1. Seating must be arranged to ensure a minimum of six feet of separation between congregants who do not reside in the same household.
2. Participants, including leaders and staff, are encouraged to utilize face coverings to the greatest extent practicable.
3. Houses of worship are encouraged to stagger services so that the entrance and egress of congregants for different services do not result in a gathering greater than fifty persons, and to provide proper sanitation between services.[1]

Plaintiffs complied with said Order on Pentecost Sunday, May 31, 2020, despite major changes in current events since the adoption of said Order.

A.   **RELEVANT NATIONWIDE JURISPRUDENCE**

On May 29, 2020, the United States Supreme Court issued their opinion in the case of *South Bay Pentecostal Church et al ,v Gavin Newsom, Governor of California, 590 U.S. ____(2020).* [2] The justices did not act on the California case until nearly midnight on Friday, May 29, 2020.      Justices Clarence Thomas, Samuel Alito, Neil Gorsuch and Brett Kavanaugh indicated that they would have granted the church's request; Kavanaugh also

---

[1] See complete Executive Order attached hereto as *Exhibit "1"*.
[2] See Decision attached here to as *Exbibit "2"*

5

wrote a dissent from the denial of the church's request. *See Decision attached hereto as Exhibit "1"*.

Roberts wrote a short opinion to express his agreement with (and to explain) the denial of the church's request. He began by noting that COVID-19 "has killed thousands of people in California and more than 100,000 nationwide," but there is "no known cure, no effective treatment, and no vaccine." Moreover, he added, people "may be infected but asymptomatic" and therefore can infect others unknowingly. The California order at the heart of this case, he observed, temporarily restricts the number of people who can gather in public "to address this extraordinary health emergency."

"The relief that the church had asked for – an order blocking the state from enforcing the restrictions on gatherings – faces a high bar", Roberts explained. And in his view, "the church could not meet that bar. The restrictions appear to be constitutional: The state has limited the size of similar, non-religious gatherings like plays, concerts and sporting events."

"Although the state treats activities like grocery stores and banks differently", Roberts continued, "those activities are in fact different, because they do not involve large groups of people coming together in close proximity for extended periods of time". "The precise question of when restrictions on particular social activities should be lifted during the pandemic," Roberts reasoned, "is a dynamic and fact-intensive matter subject to reasonable disagreement." It is also a question the Constitution has primarily delegated to politicians, which courts should normally not second-guess. "That is especially true," Roberts explained, in a case like this one, in which the church is seeking emergency relief "while local officials are actively shaping their response to changing facts on the ground." The idea that it is so

clear that the restrictions are unconstitutional that the Supreme Court should step in, Roberts concluded, "seems quite improbable."

In a three-page dissent joined by Thomas and Gorsuch, Kavanaugh argued that the restrictions on attendance imposed on the church do violate the Constitution. In his view, the businesses that are not subject to the restrictions – which, he noted, include malls, pet groomers, hair salons and marijuana dispensaries – are comparable to gatherings at houses of worship, and California has not shown a good reason for treating houses of worship differently. Because the church "would suffer irreparable harm from not being able to hold services on Pentecost Sunday in a way that comparable secular businesses and persons can conduct their activities," Kavanaugh would have granted the church's request for relief.

**B.**      **PROTESTS FOLLOWING DEATH OF GEORGE FLOYD**

On May 25, 2020, Minneapolis police officers arrested George Floyd, a 46-year-old black man, after a deli employee called 911, accusing him of buying cigarettes with a counterfeit $20.00 bill. Seventeen minutes after the first squad car arrived at the scene, Mr. Floyd was unconscious and pinned beneath three police officers, showing no signs of life.

Almost immediately after the dissemination of the footage of said gruesome death, protests erupted across the nation lead by various political groups and touched almost every state in the nation including Nevada.

On May 29, 2020, protests in Las Vegas and Reno, Nevada began, with thousands gathering over the course of the subsequent three days to protest the unlawful murder of Mr. Floyd.  Community leaders in both Southern and Northern Nevada encouraged the peaceful

protests, never once delineating a course of conduct that complied with the social distancing requirements of the COVID -19 pandemic or the Governor's Executive Orders.

In Fact, Defendant Ford, in a Unity Press Conference in Las Vegas on May 31, 2020 stated the following:

> This is another opportunity for us to show solidarity with our community; **to encourage those who, obviously reeling in pain right now to engage in their constitutional right to protest. You should do that. We want you to do that. We want you to do it peacefully however.**
>
> I am your attorney general, but before I was your attorney general, I was a black man. When I'm not an attorney general, I will be a black man. I'm a black man, married to a black woman, raising black sons. And when we see these types of atrocities happen across our Country, we hurt. My sons themselves want to participate in these protests and they have the right to do that. And if my sons do it, I will ensure and they will ensure that it is done in a peaceful way.
>
> There is so much work that we can continue doing. Frankly, I'm proud of the work that Metro has been doing the last fifteen years or so, to improve themselves, having asked and the federal government help them improve their interactions with the black community. Are they perfect? Absolutely not, do we have work to do? We absolutely do; and we want to continue with you to make that happen. I stand in solidarity with those here today, around me, letting you know that we love you and we love this City. We wanna stand with you we want to continue to support you. We will continue to do what we can in law enforcement to improve our practices and our police, to ensure that everyone is treated correctly with respect and that we can move to eliminate the type of atrocities we've seen happen in Minneapolis, in Missouri, in Chicago, in Los Angele, here, and elsewhere across our country. Thank you all for coming out. Thank you for loving this City as well. I look forward to continue to work with you.[3]

It is significant to note, that nowhere in Ford's discussions, **or any other Nevada Official's speeches** for that matter, during three unity press conferences, were their any discussions or instructions to maintain the COVID- 19, restrictions. The suspension of restrictions in favor of one First Amendment Right of assembly and protest in lieu of racial

---

[3] https://bnonews.com/index.php/klas-tv/

consternation, versus the enforcement of restriction on another First Amendment Right, to wit: Free Exercise Clause, is simply an arbitrary application that further mandates a strict scrutiny analysis under *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

Plain and simple, one First Amendment right should never be favored over another First Amendment right. The right of free exercise to the faithful is no less important than the right of freedom of assembly to the indignant.

## LEGAL AUTHORITY

The First Amendment to the United States Constitution provides:

> ***Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.[4]***

**A.  DEFENDANTS FREELY ALLOWED PROTECTED PUBLIC SPEECH AND PUBLIC ASSEMBLY IGNORING CDC AND EXECUTIVE SOCIAL DISTANCING GUIDELINES WHILE LIMITING FREE EXERCISE**

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of people peaceably to assemble. . . ." *U.S. Const. amend. I*; *see also Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938) (holding that the First Amendment's prohibitions also apply to state and local government rule-makers).

The First Amendment's protection of public speech applies with greatest force in a traditional public forum such as a public sidewalk, *see Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009),

---

[4] *U.S. Const. amend. I.*

The protections afforded by the First Amendment are nowhere stronger than in streets and parks, both categorized for First Amendment purposes as traditional public fora. *See Perry Educ. Ass'n, 460 U.S. at 45; Long Beach Area Peace Network v. City of Long Beach, 522 F.3d 1010, 1021 (9th Cir. 2008).* In such fora, the government's right "to limit expressive activity [is] sharply circumscribed." *Perry Educ. Ass'n v. Perry Educators' Ass'n, 460 U.S. 37, 45 (1983)*

Despite the broad First Amendment protection accorded expressive activity in public parks, "certain restrictions on speech in the public parks are valid. Specifically, a municipality may issue reasonable regulations governing the time, place or **manner of speech**." [*Emphasis added*] *Grossman v. City of Portland, 33 F.3d 1200, 1204-05 (9th Cir. 1994); see also Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984).* To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content neutral; (2) it must be "narrowly tailored to serve a significant governmental interest"; and (3) it must "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark, 468 U.S. at 293).*

Here as stated *supra*, Defendants did not issue any Orders or instructions as to the manner of the protests that occurred over the course of the past four days. Despite having every authority to do so under *Grossman, et seq.*, there were no guidelines issued by Defendants to comply with COVID- 19 restrictions.[5]

---

[5] The mayhem, violence, looting, civil disobedience and over 100 arrests that occurred both in Las Vegas and Reno are noteworthy results that occurred, but are irrelevant for purposes of this briefing.

10

Protestors were given wide latitude as to social distancing, while groups of hundreds of people gathered and did not require masks during the protests.[6]

It is significant to note though, that Attorney General Ford, did however, reach out to undersigned Counsel to notify Counsels for Plaintiff that any violation of Executive Directive dated 5/28/20 on Pentecost Sunday by Plaintiffs, will result in the arrest of congregants and Pastor Jimmy Morales.

**B.     THE RESTRICTIONS AND DEMOGRAPHICS ON THE STATE OF NEVADA ARE CATEGORICALLY DIFFERENT FROM THE STATE OF CALIFORNIA AND THEREFORE THE *SOUTH BAY PENTECOSTAL* DECISION DOES NOT APPLY HEREIN.**

Like, the State of Nevada, the Executive Order in California issued by Governor Gavin Newsom also aimed to limit the spread of COVID–19. The Order places temporary numerical restrictions on public gatherings to address this extraordinary health emergency. California State guidelines currently limit attendance at places of worship to 25% of building capacity or a maximum of 100 attendees. *See CalOsha Covid-19 Industry Guidance dated May 25, 2020 and attached hereto as Exhibit "3"*

The precise language of the Guideline provides:

> ***Places of worship must therefore limit attendance to 25% of building capacity or a maximum of 100 attendees, whichever is lower. This limitation will be in effect for the first 21-days of a county public health department's approval of religious services and cultural ceremonies activities at places of worship within their jurisdictions.**
> **Upon 21-days, the California Department of Public Health, in consultation with county Departments of Public Health, will review and assess the impact of these imposed limits on public health and provide further direction as part of a phased-in restoration of activities in places of worship.**

---

[6] *See Photographs attached hereto as Exhibit "5" along with Counsel's Declaration attached herein.*

While the population demographics of both the residents of the State of California and those infected in the State seemingly allow for a 25% capacity or 100 people at places of worship, while managing to curtail deaths.

According to the CDC, as of the date of this brief, with a population of over 39.5 million residents, California has had 106,878 cases of COVID- 19 with 4,156 deaths since the first case. *https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html*. *Nevada*, on the other hand, with a population of 3.08 million residents, has had 8,495 cases of COVID-19 and 417 deaths.

Despite such a disparity in cases, Defendants herein arbitrarily capped places of worship at 50 people in the State of Nevada. Seemingly, according to Defendants, a capacity of higher than 50 people in a place of worship may potentially expose worshippers to COVID-19, but in California, that exposure allegedly occurs if worshipers exceed 100 people at a time.

More significant though is the elimination of all social distancing requirements that followed in California, as protests for the murder of George Floyd were carried there as well. The *South Bay* decision was superseded by the national protests and accordingly, could not be taken into consideration by the United States Supreme Court in determination of whether the right to protest despite the COVID-19 restrictions should be given preference over freedom of worship.

The arbitrary nature of Nevada and Defendants' metric is clearly unsubstantiated by any empirical data and demonstrates that Defendants' Order is simply an ad hoc decision that is completely arbitrary and capricious.

///

///

///

### 1. Defendants Arbitrarily Allow 50% Fire Code Occupancy Rate to Secular Businesses and Limit 50 Individuals to Places of Worship

The National Fire Protection Association (NFPA) defines business occupancies as facilities, buildings, or structures which are "used for the transaction of business other than mercantile." (NFPA 101: 6.1.11.1) *Life Safety Code* identifies the fire protection and life safety requirements for business occupancies in chapters 38 and 39. Nevada's Fire Code is based on International Fire Code[7]

Following the COVID-19 outbreak both FEMA and the CDC adopted recommendations for businesses, **not using** the International Fire Code as a guideline, but empirical scientific data on the spread of the virus. *See* https://www.usfa.fema.gov/coronavirus/planning_response/occupancy_social_distancing.html

On May 31, 2020, Calvary Chapel held Pentecost Sunday services with 50 congregants in attendance. The Chapel holds a capacity of 700 worshipers throughout the church. 50 worshipers in the capacity of the approximately 16,000 s'f building is less than 10% capacity.

Based on the Governor's recommendation by using International Fire Codes for other secular businesses, a smaller congregation with much less square footage, 50 people may include a higher percentage of capacity, as in for instance 70-80% capacity according to FEMA's (Federal emergency Management Agency) COVID-19 recommendations [8].

---

[7] On January 22, 2019 the Board of Clark County Commissioners approved an Ordinance which adopted the **2018** International Fire Code with local amendments for Clark County and adopting a new fee schedule. The new code is effective as of February 6, 2019. https://www.clarkcountynv.gov/building/fire-prevention/Pages/FireCode.aspx

[8] One way of converting the CDC's 6-foot separation criteria to occupant load is to simply calculate the area of a circle with a radius of 6 feet, which is equal to approximately 113 square feet per person. This represents a conservative approach that accounts for instances when people might be standing along a wall or might not be standing in the center of the circle.

13

Assuming that FEMA's and CDC's recommendations should be used as an authority to "slow the spread"; than Calvary Chapel should be allowed to house approximately 140 worshippers at any given event/services, according to FEMA and CDC guidelines, which still would remain well under the 50% of congregants in other secular businesses, such as restaurants, bars, casinos, etc.

At this juncture, since Defendants' Orders are not based on FEMA or CDC guidelines, but appear to be a random number delineated (albeit in disparity to our neighbors in California), Plaintiffs herein request that this Court accept the empirical data of FEMA and the CDC in contemplation of the analysis as to the arbitrary Order entered by Defendants.

Furthermore, as noted above, if Defendants can allow a 50% fire code capacity in a restaurant/bar/casino where prolonged gathering may be, in addition to sharing cutlery, platters, and oxygenation/ventilation of the establishment, than there is no reason that the same occupancy cannot be afforded to non-secular places of worship.

**2.      Calvary Chapel Presents a Reopening Safety Plan that Complies with FEMA/CDC Guidelines and a 50% Capacity Allocation.**

On May 29, 2020, in response to the Phase 2 Reopening Plan, Plaintiffs provided their own plan based on CDC guidelines. It is important to note that the following are significant modifications:

- Gatherings will be limited toa maximum of 50% capacity
- Social Distancing will be strictly adhered to
- Services will be shortened and sanitation will occur between services
- Attendance will be by reservation only

---

https://www.usfa.fema.gov/coronavirus/planning_response/occupancy_social_distancing.html

- Tithes and offerings will not be gathered
- Attendees, Team and Staff members will refrain from shaking hands/hugging; etc.[9]

### C. THE ARBITRARY COLLATERALIZATION OF PUBLIC HEALTH AND WELFARE TO AFFORD PUBLIC PROTEST BUT NOT FREEDOM OF WORSHIP IS A DISCRIMINATORY ACT *AB INITIO*

It cannot be disputed that the need to publicly protest the atrocity of George Floyd's tragic murder was unforeseen. Nor can it be disputed that a suspension of Free Exercise during a world-wide pandemic was foreseeable. However, at the outset of this Supplemental Briefing, Plaintiffs provided that the right to public assembly and protest is no less important than the right to free exercise of religious worship. One First Amendment freedom shall not be favored on account of another while the ultimate goal is to slow the spread of a pandemic, regardless of which freedom is preferential to which group.

There is no empirical evidence that COVID-19 does not spread as people protest without social distancing, but does spread in places of worship that comply with CDC social distancing guidelines.

The favoring of one activity of allowing thousands of protestors to congregate, ***while ignoring all COVID-19 guidelines***, and then arbitrarily denying the civil right of worship, also in the same First Amendment said protestors rely upon, is an arbitrary preference of which First Amendment right is more important to enforce.

For the protestors of George Floyd's murder, COVID-19 mandates were much less important than their right to assemble and protest, as was demonstrated by both protestors and State officials allowing same. Contrarily, the COVID-19 mandates are not insignificant to

---

[9] Plaintiffs' complete safety plan is attached hereto as Exhibit "4".

those practicing their respective faiths, but the Free Exercise of same, could be done in accordance with said guidelines as has been demonstrated by same secular businesses.

As pictures attached hereto depict[10], social distancing was not practiced during the protests. Through their pleadings, Plaintiffs consent to and have provided a specifically delineated guideline as to practices and procedures which would not even remotely rise to the distances allowed at the public protests over the past four days.

Therefore, there cannot be any legitimate government interest in precluding people of faith to worship in accordance with mandated guidelines present for secular business; but afford complete immunity to those guidelines when it comes to people's indignation and rights to protest based on same.

---

[10] See Exhibit "5"

## CONCLUSION

Accordingly, the Court should enter a preliminary injunction enjoining Defendants from enforcement of Emergency Directives 20-003 et seq. or any matter impacting Plaintiffs constitutional interests that precludes their ability to participate in places of worship as it does in secular businesses.

Plaintiffs hereby further request that this Court enter an Order adopting guidelines substantiated by empirical data and guidelines based on fire code restrictions rather than the ad hoc mandates issued on the basis of random numbers unsupported by any data.

DATED this  1st  day of June 2020.

**CHATTAH LAW GROUP**

/s/ S. CHATTAH
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
Attorney for Plaintiffs

**JOEY GILBERT LAW**

By: /s Joseph S. Gilbert
Joseph S. Gilbert, Esq.
Roger O'Donnell, Esq
*Attorneys for Plaintiffs/Petitioners*

## **DECLARATION OF SIGAL CHATTAH, ESQ.**

I, SIGAL CHATTAH, declare as follows:

1. I am a licensed attorney in the State of Nevada since 2002 and a member of good standing with the State Bar of Nevada.

2. Both myself and JOSEPH S. GILBERT, ESQ. represent the interests of CALVARY CHAPEL LONE MOUNTAIN in this matter.

3. The photographs attached to this Supplement were printed by myself from image website searches online. I can not attest to their authenticity but do seem to be an accurate representation of the manner of the protests I viewed on television in Las Vegas, both on Las Vegas Boulevard and in Downtown Las Vegas.

4. I have no reason to believe that the photographs attached hereto from local News sites are anything but accurate depictions of protests in Las Vegas over the past 48 hours.

5. I personally, have not altered or modified any of the images attached hereto.

6. On Friday night, at approximately 21:00 hrs, my Co-Counsel Mr. Gilbert informed me that Attorney General Ford had discussed Calvary Chapel Lone Mountain exceeding the 50 person mandate with him and advised him that Pastor Morales may be arrested on Pentecost Sunday if those mandates were not followed.

7. Pastor Morales further confirmed this information with me on Saturday May 30, 2020 as he indicated that he received a phone call from a Captain

LVMPD's SIS (Special Investigative Services) Unit, warning him to refrain from said activity per the Attorney General's request.

8. Following said warning Calvary Chapel Lone Mountain was forced to turn away congregants on Pentecost Sunday to comply with Defendants mandates.

9. These are the facts as I know them to be true.

10. Under NRS 53.045, I declare under penalty of perjury that the foregoing is true and correct.

_/s/_ _SIGAL CHATTAH__
Declarant
SIGAL CHATTAH, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day June, 2020, I served a copy of the foregoing PLAINTIFFS' SUPPLEMENT TO MOTION to all registered parties via E-service on the CM/ECF registry

                                         /s/ SIGAL CHATTAH
                                         CHATTAH LAW GROUP